**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**TIMOTHY JUSTIN JOYNER**                                    **PETITIONER**

**v.**                              **NO. 4:22-cv-00183 LPR-PSH**

**DEXTER PAYNE**                                             **RESPONDENT**

<u>FINDINGS AND RECOMMENDATION</u>

<u>INSTRUCTIONS</u>

The following proposed Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

Introduction. In this case, petitioner Timothy Justin Joyner ("Joyner") challenges his convictions by means of a petition for writ of habeas corpus. He maintains in the petition that his constitutional rights were violated when he was prevented from offering a defense and when his attorneys failed to provide effective assistance related to his state court criminal case. It is recommended that Joyner's petition be dismissed because his claims were reasonably adjudicated by the Arkansas Supreme Court or otherwise warrant no relief.

State Court Proceeding. The record reflects that in 2007, Joyner was convicted of "raping his girlfriend's daughter, S.O." See Joyner v. State, 2021 Ark. 78, 621 S.W.3d 124, 127 (2021). Joyner was sentenced to the custody of respondent Dexter Payne ("Payne").

Joyner appealed his convictions. The state Supreme Court found no reversible error and affirmed the convictions. See Joyner v. State, 2009 Ark. 168, 303 S.W.3d 54 (2009).

Joyner then filed a state trial court petition for post-conviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. The

petition languished in the trial court for approximately ten years before it was denied.

Joyner appealed the denial of his Rule 37 petition. The state Supreme Court found no reversible error and affirmed the denial of his petition. See Joyner v. State, 2021 Ark. 78, 621 S.W.3d 124 (2021).

Federal Court Filings. Joyner then began the case at bar by filing a petition pursuant to 28 U.S.C. 2254. He raised three claims in the petition. First, he maintained that he was prevented from offering a defense. He so maintained for the following three reasons: the trial court erred when it denied Joyner's request for S.O. to testify at a pre-trial hearing conducted pursuant to the Arkansas Rape Shield statute; the court erred when it refused to consider hearsay evidence during the hearing; and the court erred when it barred Joyner from questioning S.O. at trial about a prior sexual assault. See Docket Entry 1 at CM/ECF 15-16. Second, Joyner maintained that he was denied effective assistance of counsel when his attorney failed to make a timely motion for mistrial. The claim is built upon Joyner's assertion that an expert's testimony differed from the expert's pre-trial report, and counsel delayed in moving for a mistrial on that basis. Third, Joyner maintained that he was denied effective assistance of counsel when his trial attorney, and later a different attorney in the Rule

37 proceeding, failed to present admissible evidence for another cause of S.O.'s vaginal injuries.

Payne filed a response to Joyner's petition and asked that it be dismissed. Payne maintained, in part, that Joyner's claims were reasonably adjudicated by the state Supreme Court and the adjudications should be accorded deference.[1]

Facts. The state Supreme Court made factual findings that are adopted in full. They are as follows:

> On May 17, 2006, an information was filed charging Appellant (note: i.e., Joyner) with four counts of rape, each of which was a class "Y" felony in violation of Arkansas Code Annotated 5-14-103. Each count charged him with unlawfully and feloniously engaging in sexual intercourse or deviate sexual activity with S.O., who was less than fourteen years of age.
>
> On April 25 and December 13, 2007, Appellant filed motions to admit evidence of prior sexual conduct of S.O., specifically evidence that she had made prior allegations of sexual assault against other males in a familial relationship. Appellant alleged that S.O. was the victim of two prior sexual assaults. He claimed that the evidence of two prior sexual assaults could be the cause of injury to S.O.'s vaginal area. The two alleged incidents involved a man named Lavelle in 2000 and a man named Chuck McGhee in 2001. (Footnote in original: The

---

[1]     Payne also maintained that Joyner's petition is barred by the one-year statute of limitations found at 28 U.S.C. 2244(d). The undersigned will not consider the assertion but will instead bypass it.

Joyner filed a reply to Payne's response. In the reply, Joyner addressed Payne's assertions.

record and briefs refer to the alleged 2001 abuser as both "Chuck McGhee" and Chuck McKee." We will refer to him as "McGhee" to avoid confusion.)

On December 17, 2007, the Stone County Circuit Court held an in camera hearing on the rape-shield motion. Appellant called Tammy Mosley, the mother of S.O.'s best friend, D.D., who testified that she had knowledge of previous sexual abuse of S.O. Appellant also presented an affidavit of Tammy stating that she had "first-hand knowledge of the molestation of [S.O.] by Mr. [McGhee] in 2001" and that "[S.O.] was not a virgin when she accused [Appellant] of rape." Appellant also offered the affidavit of D.D., Tammy's daughter. The affidavit was excluded on hearsay grounds, but was proffered into the record. D.D.'s affidavit stated that both she and S.O. were touched in their private areas by Lavelle, that S.O. was molested many times in 2000 and 2001, and that S.O. was not a virgin when she accused Appellant of rape. It was reported to Human Services that S.O.'s mother walked in on Chuck McGhee having sex with S.O. After the testimony of Tammy and D.D., Appellant asked to call S.O. to testify in the in camera hearing.

Relying on Sterling v. State, 267 Ark. 208, 590 S.W.2d 254 (1979), the circuit court ruled that there is no requirement for S.O. to present herself for questioning by the accused and denied Appellant's request to call S.O. to the stand. The circuit court ruled that Appellant did not offer proof that the alleged prior act occurred and that the rape-shield statute precluded any inquiry into the prior sexual conduct of S.O.

On the first day of trial, Jennifer Beaty, the DNA analyst from the Arkansas Crime Lab, testified that DNA found on a pair of S.O.'s underwear belonged to S.O. within a reasonable degree of scientific certainty. At the beginning of Appellant's cross-examination of Beaty, he moved for a mistrial on the grounds that she had changed her opinion and that he would not be able to effectively cross-examine her due to the sudden change in her opinion. The circuit court denied the motion for mistrial on the basis that it was not timely made and because

all of the materials from Beaty's file had been supplied to Appellant.

On December 20, 2007, Appellant moved for a new trial pursuant to Arkansas Code Annotated section 16-89-130 and Arkansas Rule of Criminal Procedure 33.3(a), arguing again that he never received notice of Beaty's changed opinion. The circuit court reaffirmed its previous ruling that the motion for mistrial was not timely and denied Appellant's motion for new trial.

See Joyner v. State, 303 S.W.3d at 55-56.

Claim One. Joyner's first claim is that he was prevented from offering a defense. His claim is three-fold: the trial court erred when it denied Joyner's request for S.O. to testify at the pre-trial hearing; the court erred when it refused to consider hearsay evidence during the hearing; and the court erred when it barred Joyner from questioning S.O. at trial about having been sexually assaulted in 2001 by Chuck McGhee ("McGhee").

On direct appeal, Joyner challenged the trial court's refusal to allow questioning of S.O. about a prior sexual assault. The state Supreme Court construed the claim as a challenge to the trial court's refusal to allow questioning of S.O. at the pre-trial hearing and as a challenge to the court's denial of Joyner's request to question S.O. at trial about having been assaulted by McGhee. It does not appear that the claim was construed as a challenge to the court's refusal to consider hearsay evidence during the

hearing. The state appellate court rejected the claim. As to Joyner's

request to question S.O. at the hearing, the court found the following:

> The in camera hearing is not designed to be used as a
> subterfuge to obtain a discovery deposition from the alleged
> victim. ... There is no requirement that the victim present
> herself for questioning by the accused. ... Appellant argues on
> appeal that this "blanket statement should not be the law."
> However, he has provided no convincing authority to change
> the law set out in <u>Sterling</u> ...

<u>See</u> <u>Joyner v. State</u>, 303 S.W.3d at 58-59. As to Joyner's request to question

S.O. at trial about having been assaulted by McGhee, the state appellate

court found the following:

> ... Appellant is attempting to introduce prior sexual conduct to
> prove that there was an alternate source for the victim's injury,
> rather than alternate source for her sexual knowledge. ... Under
> an analysis of the <u>Townsend</u> factors, Appellant's offer of proof
> fails. The circuit court found that Appellant failed to meet the
> first factor of the test because Appellant did not prove that the
> prior act clearly occurred. Appellant presented the testimony
> of Tammy and D.D. and their affidavits, all of which were
> determined by the circuit court to be hearsay. The only other
> proof he presented was a CIP Intake report, admitted for the
> purposes of the rape-shield hearing, which was never
> authenticated. The CIP report alleged that Chuck McGhee
> sexually abused S.O. by vaginal penetration. S.O. would have
> been approximately five years old at the time of the alleged
> 2001 assault by Chuck McGhee. S.O. told the prosecution that
> she did not remember being sexually abused in 2001. There is
> no substantial evidence to prove that the alleged sexual abused
> by Chuck McGhee in 2001 "clearly occurred." ... Because
> Appellant has failed to meet the test set out in <u>Townsend</u>, it

was not a manifest abuse of discretion for the circuit court to exclude evidence regarding the alleged 2001 sexual abuse.

…

We also reject Appellant's argument that the rape-shield statute, as applied to this case, violates his constitutional right to present a defense. Appellant was able to present a defense. He cross-examined Dr. Jones, who testified that the injury to S.O.'s vaginal area was "not a fresh injury," but "occurred sometime in the past." Appellant was able to cross-examine S.O. at trial about her allegations against Appellant. Moreover, the parties stipulated to the 2000 sexual abuse, allowing Appellant to offer evidence to the jury of an alternative source of the damage to S.O.'s hymen. …

See Id., 303 S.W.3d at 58-59.[2]

28 U.S.C. 2254(d) mandates the granting of deference to the adjudication of a claim made by a state court. See McCoy v. Norris, No. 5:06-cv-00261-JFF, 2007 WL 865409 (E.D.Ark. February 13, 2007). 28 U.S.C. 2254(d) provides that if a claim was adjudicated on the merits in state court, a federal court cannot grant relief unless the state court (1)

---

[2]     In State v. Townsend, 366 Ark. 152, 233 S.W.3d 680 (2006), the state Supreme Court recognized that "evidence of a child victim's prior sexual conduct could be relevant to rebut the weighty inference that the victim must have received his or her knowledge of sexual matters from the alleged encounters with the defendant." See Joyner v. State, 303 S.W.3d at 58. The court adopted a five-factor test for determining "whether evidence of a child victim's prior sexual conduct is admissible for the limited purpose of proving an alternative source for the child's sexual knowledge." See Id. The first factor requires the defendant to offer proof that the prior act "clearly occurred." See Id. The court applied the Townsend factors to the facts of Joyner v. State, i.e., a case in which the defendant attempted to introduce prior sexual conduct to prove an alternate source for "the victim's injury, rather than alternate source for her sexual knowledge." See Id. at 58.

"contradicted or unreasonably applied" United States Supreme Court precedent, or (2) made an adjudication "based on an unreasonable determination of the facts in light of the evidence presented" in the state court proceeding. See Shoop v. Twyford, No. 21-511, 142 S.Ct. 2037, 2022 WL 2203347, 4 (June 21, 2022) (internal quotation marks omitted).[3] The question is not whether the federal court believes the state court's determination was incorrect. See Id. Instead, the question is whether the state court's determination was unreasonable, a substantially higher threshold than whether the determination was incorrect. See Id.

Joyner maintains that 28 U.S.C. 2254(d) is inapplicable. It is his contention that the state Supreme Court's adjudication resulted in a decision contradicting or unreasonably applying United States Supreme Court precedent guaranteeing his right to present a complete defense. He maintains that "the categorical prohibition of a defendant to call an accuser in a rape shield hearing violates federal and state constitutional

---

[3]    A state court adjudication contradicts clearly established federal law if the state court applies a rule different from the governing law set forth in United States Supreme Court cases, or if the state court decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. See White v. Kelley, 824 F.3d 753 (8th Cir. 2016). A state court adjudication involves an unreasonable application of federal law if the state court correctly identifies the governing law but unreasonably applies the law to the facts of the case. See Id. An state court adjudication based on unreasonable determination of the facts occurs only if it is shown by clear and convincing evidence that the court's presumptively correct factual findings are not supported by the record. See White v. Dingle, 757 F.3d 750 (8th Cir. 2014).

rights of confrontation and compulsory process …" <u>See</u> Docket Entry 1 at CM/ECF 11.

The Constitution guarantees a criminal defendant a meaningful opportunity to present a complete defense. <u>See</u> <u>Crane v. Kentucky</u>, 476 U.S. 683 (1986). The right, though, is not without limits. The undersigned had an occasion to recite some of those limits in a prior case involving the sexual assault of a minor. <u>See</u> <u>Mouton v. Kelley</u>, No. 5:18-cv-00306-BSM-PSH, 2019 WL 1497044 (E.D.Ark. March 18, 2019), report and recommendation adopted, No. 5:18-cv-00306-BSM, 2019 WL 1495261 (E.D.Ark. April 4, 2019). The undersigned will not repeat that effort, save to note that a defendant's constitutional right to present relevant testimony may bow to accommodate other legitimate interests, for instance, the interests underpinning a rape shield statute. <u>See</u> <u>Michigan v. Lucas</u>, 500 U.S. 145 (1991).

As a part of presenting a complete defense, a criminal defendant is guaranteed the right to confront the witnesses against him, including the right to conduct "reasonable cross-examination." <u>See</u> <u>Olden v. Kentucky</u>, 488 U.S. 227, 231 (1988). "Pursuant to this right, a ... defendant must be given an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent,

the defense might wish." See Sittner v. Bowersox, 969 F.3d 846, 850 (8th Cir. 2020) (internal quotations marks and citations omitted).

The facts relevant to the denial of Joyner's request to question S.O. at the pre-trial hearing are undisputed, and the state Supreme Court's adjudication did not result in a decision contradicting or unreasonably applying United States Supreme Court precedent. Joyner has not cited any United States Supreme Court precedent for the proposition that a minor victim must testify at a hearing conducted pursuant to a rape shield statute. Moreover, the state Supreme Court adjudication cannot reasonably be understood as having adopted a "categorical prohibition" against a minor victim testifying during such a hearing. The state Supreme Court could and did affirm the trial court's finding that there was no substantial evidence to prove the McGhee assault clearly occurred and that S.O. could not be questioned at the pre-trial hearing about the assault.

Joyner cites LaJoie v. Thompson, 217 F.3d 663 (9th Cir. 2000), for the proposition that a defendant's constitutional rights are violated when he is prevented from questioning a minor victim during a hearing held pursuant to a state's rape shield statute. There are at least two problems with Joyner's assertion. First, LaJoie v. Thompson is not controlling United States Supreme Court precedent. Second, the facts of LaJoie v. Thompson

are distinguishable from the facts of the case at bar, and that case is not applicable here.

With respect to the trial court's denial of Joyner's motion to question S.O. at trial about having been sexually assaulted by McGhee, the state Supreme Court's adjudication did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented.[4] The state Supreme Court could and did reasonably affirm the finding that there was no substantial evidence to prove the incident clearly occurred. Specifically, the state Supreme Court could and did affirm the finding that the testimony and affidavits from S.O.'s friend, D.D., and D.D.'s mother, Tammy Mosley, ("Mosley") were hearsay; the CIP Intake document was not authenticated; and S.O. had no memory of the assault.[5]

As a part of claim one, Joyner also maintains that the trial court erred when it refused to consider hearsay evidence during the pre-trial hearing.

---

[4]     The state Supreme Court's adjudication does not require an inquiry into whether the adjudication contradicts or unreasonably applies United States Supreme Court precedent. To the extent such an inquiry is required, the adjudication does not contradict or unreasonably apply United States Supreme Court precedent.

[5]     D.D.'s testimony during the pre-trial hearing can be found at Docket Entry 5-3 (Exhibit 4, Part 3) at CM/ECF 49-64. Her affidavit can be found at Docket Entry 5-6 (Exhibit 4, Part 6) at CM/ECF 25. Mosley's testimony during the pre-trial hearing can be found at Docket Entry 5-3 (Exhibit 4, Part 3) at CM/ECF 29-49. Her affidavit can be found at Docket Entry 5-6 (Exhibit 4, Part 6) at CM/ECF 21-23. The CIP Intake document can be found at Docket Entry 5-6 ( Exhibit 4, Part 6) at CM/ECF 13-17.

Although it appears that he never raised this part of claim one in the state courts, the undersigned will briefly consider the assertion.

In Sittner v. Bowersox, the Court of Appeals observed the following with respect to questions involving the admission of evidence:

> ... Generally, in the habeas context, "[q]uestions regarding admissibility of evidence are matters of state law." Rousan v. Roper, 436 F.3d 951, 958 (8th Cir. 2006) (quoting Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993)). "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." Bucklew v. Luebbers, 436 F.3d 1010, 1018 (8th Cir. 2006).

See Sittner v. Bowersox, 969 F.3d at 849-850. Thus, to prevail, Joyner must show that "the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." See Id. at 850 (internal quotations and citations omitted).

Here, Joyner challenges evidentiary rulings made by the trial court during a pre-trial hearing, not during his trial. Specifically, he maintains that the court erred during the pre-trial hearing when it excluded testimony and affidavits from D.D. and Mosley as hearsay and excluded the CIP Intake document because it was not authenticated. Accepting that rulings during a pre-trial hearing can be so egregious that they fatally infect

a proceedings and render an entire trial fundamentally unfair, Joyner's challenge warrants no relief for at least two reasons.

First, the trial court could reasonably exclude the evidence. The court could and did find that D.D.'s testimony and affidavit were hearsay, and she had no direct knowledge of the McGhee assault. The court could and did also find that Mosley's testimony and affidavit were hearsay, and the CIP Intake document was not authenticated.

Second, any prejudicial effect of the evidentiary rulings was mitigated by a stipulation entered into between the prosecution and Joyner. They stipulated that S.O. was sexually assaulted in 2000 by a man named Lavelle. Joyner was able to offer evidence of the 2000 assault as an alternate source for the injuries S.O. sustained to her vaginal area.

Claim Two. Joyner's second claim is that he was denied effective assistance of counsel when his attorney failed to make a timely motion for mistrial. The claim is built upon Joyner's assertion that the prosecution's expert witness, Jennifer Beaty ("Beaty"), testified different than her pre-trial report, and counsel delayed in moving for a mistrial on that basis.

Joyner raised claim two in his Rule 37 petition and again in appealing the denial of the petition. The state Supreme Court rejected the claim, finding the following:[6]

> Here, at trial, the State's expert witness, Jennifer Beaty, a forensic DNA examiner with the Arkansas State Crime Laboratory, testified about DNA analysis from several items submitted to the lab, including three pairs of girls' underwear that were collected from S.O.'s bedroom. The DNA on the underwear was found to be a mixture from two individuals and identified as consistent with Joyner's and S.O.'s DNA. On direct examination, while being questioned regarding the DNA associated with S.O., Beaty testified that an individual's DNA will be similar to related persons, but not identical to the individual's parents. Beaty explained that this is because half of an individual's DNA comes from the mother and half from the father; therefore, an individual's DNA would be similar to related individuals but not identical. Joyner's argument regarding Beaty's alleged new DNA testimony stems from Beaty's testimony concerning the DNA of related individuals. Beaty testified that S.O. would not have the same DNA as S.O.'s mother:
>
>> The State: So [S.O.'s] mother would she have the same DNA as [S.O.]?
>>
>> Beaty: No she wouldn't.
>>
>> The State: ... Can you tell me ... what the likelihood of somebody else having the same DNA picture of [S.O.] is?
>>
>> Beaty: Well, from the underwear there was a major component that [S.O.] could not be excluded from.

---

[6]   The state appellate court's adjudication of claim two is fact-intensive and involved. Because it is, the undersigned must quote extensively from the court's decision.

She's consistent with the major component. And from that you'd see that one in four point four six quadrillion people – in the Caucasian population you would of that many people maybe find one individual that could be excluded. So it'd be very rare.

...

The State: ... Now a quadrillion, I'm not sure how many that is.

Beaty: ... It's a really large number. That's greater than a billion. Greater than trillion ... it's many times the population [of this planet].

...

The State: All right. So ... that's the likelihood that we'd find someone else that has the same DNA picture as [S.O.].

Beaty: Right.

...

The State: Now, [on the sample], ... we've got [S.O.'s] DNA and we have ... Joyner can't be excluded is that the way you say it?

Defense Counsel: I object to her saying [S.O.'s] DNA cause I don't think it's been identified as that. I think it's a mischaracteriz[ation] ... to the Jury. I think she said it's consistent with it. She's not made an identification statement so the Prosecutor's continued to do that.

The Court: Okay. Would you rephrase please.

The State: Please tell the jury, I don't want to misstate anything.

Beaty: The DNA identified ... is consistent with [S.O.].

The State: Okay. And -- and what are the statistics for the similarity there?

Beaty: ... It's one in four point four six quadrillion.

The State: Can you make an identity statement on one in four point four six quadrillion?

Beaty: I can but I didn't report it as that way.

The State: ... So is -- is that [S.O.'s] DNA?

Beaty: In my opinion yes.

The State goes on to ask Beaty approximately fifty additional questions regarding her report and the DNA results related to S.O. and Joyner, during which Joyner objects:

The State: ... So in conclusion the significant part of your findings are that we've got S.O.'s DNA ...?

Defense Counsel: Objection, that's not what she said. It's a mischaracterization again.

The State: She made an identification statement.

Defense Counsel: She said it was consistent.

The State: Can you make an identification statement?

Beaty: I didn't report the identification statement. So it is consistent with [S.O.]. And the statistics that

I just brought to ... give you an idea of the likelihood that it's [S.O.'s] is one in four point four six quadrillion.

The State: ... So it's [S.O.'s] DNA, is that a fair statement to tell this jury?

Beaty: It is consistent with [S.O.]. It basically is her DNA.

Beaty went on to answer approximately three more questions and direct examination concluded at noon and the circuit court recessed for lunch. Prior to recess, the circuit court asked the attorneys if there was anything else to address and defense counsel responded, "Not at this time, Your Honor, not from the Defendant." When the trial reconvened, Joyner began his cross-examination of Beaty and after approximately a dozen questions regarding her report that the DNA profile she identified from the underwear was consistent with S.O.'s DNA, Beaty explained that she does not perform statistical analysis on items that originate from the victim:

Since the underwear was submitted to me as victim's underwear I did not do statistics because if it came from the victim why do statistics. But I did, ah, calculate statistics in case.

Joyner moved for a mistrial, alleging that Beaty's testimony was new information and not disclosed to Joyner during discovery. Joyner alleged that Beaty had changed her opinion from what was in her disclosed report and had failed to provide her statistical analysis to Joyner. Joyner argued a mistrial was warranted, asserting that Beaty had disclosed only that the DNA was consistent with S.O.'s DNA rather than a match. The circuit court conducted an in camera hearing where Beaty testified that, on her own, she had calculated the statistics the day before the trial and did not share them with the either the State or Joyner. Beaty further testified:

> [The calculations] were not new calculations. What it is is that we were submitted the victim's underwear.... If it's submitted to us as victim's underwear we usually do not do statistics on it ... if it's consistent with the victim. Because if it's the victim's underwear it's known to be their underwear why do the statistics. And this is just to back up that this is consistent with her. And this -- this is her DNA.

Beaty reiterated her testimony in the in camera hearing and explained, she had not previously calculated the statistics for the report because "when something is removed from the victim we usually do not do statistics on it because if it comes back I mean this is the victim's DNA on this article of clothing that is known to be theirs." Further, Beaty testified she performed the calculations "to back up that this is consistent with [S.O.]." Beaty testified that the statistics came from the report both parties were given and that her opinion had never changed. The circuit court denied the motion for mistrial for two reasons: (1) the motion was untimely and (2) Beaty's entire file had been provided to Joyner.

At the Rule 37 hearing, Joyner's trial counsel, William O. James, testified he anticipated that Beaty's report stating that the DNA analysis was "consistent with" would be a "pretty high number." Based on this, James had represented to the jury in his opening statement that the State did not have an identification on the DNA. James further testified that at trial, Beaty's opinion changed from "it's probably this person to absolutely it's this person. And so, it's a big difference. And certainly part of the big problem in this case was, I was unaware that she had changed her opinion.... I am in the middle of trial and now all of a sudden I was completely wrong about what she was going to say.... My credibility [with the jury was] gone." Further, James testified that he moved for a mistrial two or three questions into cross-examination when he realized that Beaty had changed her opinion.

The circuit court denied Joyner's claim for postconviction relief, finding:

> A careful reading of the trial record ... reveals that trial counsel's only valid argument, was a discovery and evidentiary issue fully litigated in chambers (in camera) at trial.... Evidentiary and discovery objections were made and argued before the trial by Defendant's trial counsel and by the State on several issues.
>
> ....
>
> Defendant was supplied all materials by the Arkansas State Crime Laboratory.... Consequently, no prejudice can be established by the Defendant....
>
> Moreover, the Defendant has failed to carry his burden of prejudice, i.e., that the decision of the jury regarding guilty would have been different. The defendant's trial counsel acknowledged that other evidence, in addition to the DNA evidence underlying this claim, would underlie his client's guilt.... In this case, where the victim testified, and where there was other overwhelming evidence of guilt for the jury to consider, the burden for the Defendant to show that the fact-finder would have a different outcome considering this claim solely is a significant and one that the Defendant cannot carry.

Joyner contends that the circuit court erred in failing to recognize that James's failure to move for a timely mistrial was deficient representation and James should have requested a continuance to discuss the new evidence with Joyner and reevaluate his cross-examination of Beaty. Joyner asserts he was prejudiced by this because Joyner would have received a new trial or he would have taken a plea, which demonstrates that a different result would have occurred. Joyner also

contends that had James timely moved for a mistrial he would have received a new trial, or had James moved for sanctions pursuant to Rule 19.7 he would have entered a plea agreement. We note that Joyner develops much of his argument based on opinions from Thomas Pavlinic. However, the circuit court struck Mr. Pavlinic's testimony.

... We are unpersuaded that the circuit court erred in denying Joyner relief on this claim. Here, a thorough review of the record discussed above demonstrates that despite Joyner's argument, Joyner and the State retained the same report and information—the report provided to both parties stated that the match was 16 out of 16. Further, although Joyner argues that Beaty's testimony was changed or new, neither party was aware of the testimony that Joyner alleges was new—the calculations. And although Joyner argues that the degree of certainty changed and that Beaty's opinion was new, the record demonstrates that Beaty's testimony remained the same: the DNA on the underwear found in S.O.'s room was a strong match to S.O.'s DNA and consistent with S.O.'s DNA profile. Finally, we also note that other evidence supported the match to S.O., including S.O.'s own testimony. Based on our discussion above, a careful review of the record demonstrates that Joyner has failed to meet his burden under the first Strickland prong because he has not demonstrated that James's performance fell below an objective standard of reasonableness. ...

See Joyner v. State, 621 S.W.3d 130–134.

A challenge to counsel's representation is governed by Strickland v. Washington, 466 U.S. 668 (1984), which requires a two-part showing. It requires the petitioner to show that counsel's performance was deficient and, if so, that the petitioner was prejudiced by the inadequate representation. See Stephens v. Smith, 963 F.3d 795 (8th Cir. 2020).

Counsel is strongly presumed to have rendered adequate assistance. See Burt v. Titlow, 571 U.S. 12 (2013).[7]

The state Supreme Court's adjudication cited, and was a reasonable application of, Strickland v. Washington, and Joyner has not shown that the adjudication resulted in a decision contradicting or unreasonably applying United States Supreme Court precedent.[8] The relevant facts as reasonably found by the state Supreme Court are undisputed: the prosecution and Joyner possessed the same report and information; neither the prosecution nor Joyner were aware that Beaty had performed calculations the night before the trial on the basis of the information contained in her pre-trial report; notwithstanding the calculations, her testimony was consistent with her pre-trial report, i.e., "the DNA on the underwear found in S.O.'s room was a strong match to S.O.'s DNA and consistent with S.O.'s DNA profile;" and other evidence, including S.O.'s

---

[7]    If a challenge to counsel's representation is adjudicated on the merits in state court, the adjudication is also accorded deference, save one of two instances. See 28 U.S.C. 2254(d). Taken together, Strickland v. Washington and 28 U.S.C. 2254(d) create a doubly deferential standard of review. See Williams v. Roper, 695 F.3d 825 (8th Cir. 2012).

[8]    Although the state Supreme Court neither cited nor applied any other United States Supreme Court precedent in adjudicating the claim, none was required as the "general standard" of Strickland v. Washington was sufficient to resolve claim two. See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

own testimony, supported the match to S.O.[9] Given those facts, the state Supreme Court could and did reasonably find that counsel's performance was not deficient when he did not immediately move for a mistrial on the basis of Beaty's calculations.

Claim Three. Joyner's third claim is a two-part claim. He maintains that he was denied effective assistance of counsel at trial and in the Rule 37 proceeding. Joyner maintains that his trial and Rule 37 attorneys failed to present admissible evidence for another cause of S.O.'s vaginal injuries.

Joyner raised the first part of claim three in his Rule 37 petition and in appealing the denial of the petition. The state Supreme Court rejected the first part of claim three, finding the following:

> Immediately prior to trial, the circuit court held a rape-shield hearing wherein Joyner sought to introduce evidence of two instances of prior sexual conduct. The first event occurred in 2000, and the parties stipulated to the following: that S.O. was digitally penetrated in an assault that occurred in July 2000; that S.O. was taken to a social services agency at that time; and that S.O. would testify that she does not remember vaginal bleeding after the assault in 2000. The record demonstrates that Joyner used this stipulation as an alternate source of injury to S.O.'s vaginal area.
>
> The second instance of prior sexual conduct Joyner sought to introduce occurred in 2001 and is the one at issue in this appeal.

---

[9]     The undersigned recognizes that part of this claim involves whether S.O.'s DNA was on her own underwear.

The 2001 incident of alleged prior sexual conduct stems from alleged sexual abuse by Chuck McGhee. At the rape-shield hearing, Joyner called one witness, Tammy Mosley; submitted one affidavit from Mosley's minor daughter, D.D., and introduced CIP-Louisiana Child Services Reports for use at the in camera hearing. The circuit court denied Joyner's motion to introduce evidence of prior sexual conduct, finding that Joyner failed to offer proof that the prior alleged act did clearly occur and that the rape-shield statute precluded any inquiry into prior sexual conduct of S.O.

At the Rule 37 hearing, James testified that he did not attempt to get certified copies of the CIP-Louisiana Child Services Reports. James further testified that "any other prior allegations ... and then certainly other causes for a possible reasons for what injury or physical evidence was found by [the State's witness] Dr. Jones, certainly would be good to deflect away from Mr. Joyner." James testified that if he had been able to get the documents introduced, he would have been able to cross-examine Dr. Jones about possible sources of S.O.'s vaginal injury. James also testified in the hearing that his performance in not getting the appropriate records admitted into evidence fell below the standards of care of an attorney in Arkansas. Further, James testified that the evidence would have been absolutely beneficial to Joyner's case. The circuit court denied Joyner's claim, finding that

> James admitted that he failed to obtain authenticated and/or certified copies of a CIP intake report.... The Defendant failed to establish the Strickland burden—enunciated in Arkansas ... that there would have been a reasonable probability of a different outcome.
>
> Further, in support of its burden, [Joyner] offers no proof of how such records would be authenticated, how such records would be offered into evidence, the substance of such-to-be-authenticated records, the proffered testimony regarding the substance of

such records, or the qualifications or competence of any person or persons proposed to testify (which none have been proffered or simply named) about the substance contained in these records. Prejudice cannot be presumed in such circumstances with without more is self-serving, speculative, and conclusory ... Arkansas courts have repeatedly, in the context of ineffective assistance of counsel cases, held that failing to call a witness or present evidence requires the petitioner, at the post-conviction stage to name the witness, summarize the testimony, and establish that the testimony would have been admissible.... The record at the evidentiary hearing is absolutely devoid of any such evidence. This court cannot grant post-conviction relief when the petitioner fails to show what the omitted testimony or evidence was and how it would have changed the outcome.

Joyner contends that the circuit court erred in denying his claim regarding the 2001 incident. Joyner asserts that if James had authenticated the documents, they would have been admissible. On this basis, Joyner argues that because of James's failure to produce admissible evidence, the jury did not hear 50 percent of the reliable evidence as to the potential source of the injury and did not hear evidence of penetration. Joyner alleges that admissibility of this evidence would have changed the outcome of the trial.

To prevail in this case, Joyner "must identify the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. (Citations omitted). To demonstrate prejudice, Joyner is required to establish that there was a reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. (Citations omitted).

> Here, the record demonstrates that Joyner did not admit any documents into evidence at the Rule 37 hearing, address how the documents would be authenticated, explain how the documents would be admissible, or demonstrate how the contents of the report would be admissible. Accordingly, Joyner failed to demonstrate that his counsel was ineffective. ...

See Joyner v. State, 621 S.W.3d at 134–136.

The facts relevant to Joyner's challenge to counsel's representation are undisputed, and the state Supreme Court's adjudication did not result in a decision contradicting or unreasonably applying United States Supreme Court precedent. As the state Supreme Court could and did find, Joyner did not admit any documents into evidence during the Rule 37 hearing, did not address how the CIP Intake document would be authenticated, or otherwise explain how the document and its contents would be admissible.

Joyner attempts to overcome the aforementioned problems by assigning blame to his Rule 37 counsel. Specifically, Joyner maintains that Rule 37 counsel was ineffective because he failed to show how the documents could have been admitted during the pre-trial hearing. Joyner's challenge warrants no relief for at least five reasons.

First, Joyner never presented this part of claim three—the challenge to his Rule 37 attorney's representation—to the state courts. Instead, this petition appears to be the first time he raised this part of claim three.

Second, it is questionable whether a claim of ineffective assistance of post-conviction counsel is cognizable in a proceeding pursuant to 28 U.S.C. 2254. Although such a claim can serve as cause for a procedural default, it is questionable whether a freestanding claim of ineffective assistance of post-conviction counsel can warrant habeas relief.

Third, the trial court did not unreasonably exclude D.D.'s testimony and affidavit as hearsay. She had no first-hand knowledge of the McGhee assault.

Fourth, the trial court did not unreasonably exclude Mosley's testimony and affidavit as hearsay. She too had no first-hand knowledge of the McGhee assault. Mosley learned of the assault from S.O.'s mother and reported it to the authorities. See Docket Entry 5-3 (Exhibit 4, Part 3) at CM/ECF 44.

Fifth, with respect to the CIP Intake document, the question is not whether the trial court's ruling was incorrect; instead, the question is whether the court's ruling was unreasonable. The undersigned cannot find that the trial court unreasonably excluded the CIP Intake document as hearsay.

Recommendation. For the foregoing reasons, it is recommended that Joyner's petition be dismissed, all requested relief be denied, and

judgment be entered for Payne. In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a certificate of appealability should also be denied. The undersigned is not persuaded that Joyner can make a "substantial showing of the denial of a constitutional right." <u>See</u> 28 U.S.C. 2253(c)(2).

DATED this 6th day of July, 2022.


_____
UNITED STATES MAGISTRATE JUDGE