IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**TIMOTHY JUSTIN JOYNER**                                                                                              **PETITIONER**
**ADC #140913**

v.                                                   Case No: 4:22-CV-00183-LPR

**DEXTER PAYNE, Director,**
**Arkansas Division of Correction**                                                                           **RESPONDENT**

## ORDER

The Court has reviewed the Recommended Disposition (RD) submitted by United States Magistrate Judge Patricia S. Harris and the Petitioner's Objections.[1]  After a *de novo* review of the RD, along with careful consideration of the objections and the case record, the Court hereby approves and adopts the RD in its entirety as this Court's findings and conclusions in nearly all respects.[2]  The Court does, however, wish to add a few, brief observations.  These observations are not meant to be exhaustive, nor to address each issue disposed of in the RD.  They are simply meant to add color to some of the legal issues in this case.

*First*, the Court has grave concerns as to whether the Supreme Court's *Rock-Lucas* principle[3] is consistent with the original public meaning of the constitutional provisions implicated in this case.  The Court worries that the *Rock-Lucas* principle is not as protective of a criminal defendant's constitutional rights as the Constitution requires.   But the Court's

---

[1] Docs. 10, 12.

[2] There is one caveat.  The Court disagrees with the RD's observation that "it appears that [Joyner] never raised" the claim that the trial court erred "when it refused to consider hearsay evidence during the pre-trial hearing."  Doc. 10 at 12–13.  *See also id.* at 6 (discussing the Supreme Court of Arkansas's construction of Mr. Joyner's claims).  The Court will not belabor this point, however, because the RD went on to address the merits of the hearsay-evidence claim anyway.  *See id.* at 12–13 (going on to "briefly consider the" claim it believed to have been unraised).

[3] The *Rock-Lucas* principle provides that "a state court cannot impose a per se rule for disallowing evidence under a rape-shield law; rather, it must determine, on a case-by-case basis, whether the exclusionary rule is arbitrary or disproportionate to the State's legitimate interests." *Barbe v. McBride*, 521 F.3d 443, 449 (4th Cir. 2008) (internal quotation marks and citations omitted).  *See also Michigan v. Lucas*, 500 U.S. 145, 151 (1991); *Rock v. Arkansas*, 483 U.S. 44, 56 (1987).

misgivings are irrelevant to the proper analysis required here. The Court is bound by the directly controlling holdings of the Supreme Court. And, in any event, the "as determined by the Supreme Court" language in the AEDPA statute makes crystal clear that the *Rock-Lucas* principle must be applied as the proper yardstick against which to evaluate the state court's adjudication.[4]

*Second*, the Court also questions whether the *Pulizzano* test, adopted by the Supreme Court of Arkansas in *State v. Townsend*,[5] is a good fit for the actual language of Arkansas's rape-shield law, namely Arkansas Code Annotated Section 16-42-101(c).[6] But that is even further outside the Court's remit on habeas review. State courts get to decide state law, correctly or incorrectly.[7] Those decisions are not open to review in a proceeding like this one.[8]

*Third*, the Court does not read the habeas petition to directly attack the *Pulizzano* test as contrary to, or an unreasonable application of, the *Rock-Lucas* principle. In any event, such a challenge would fail. Even if that test is less than perfect or is not the exact formulation a federal court would have used, the test is at least not an unreasonable way to apply the *Rock-Lucas* principle. In short, the *Pulizzano* test provides a minimally fair framework for the case-by-case analysis that *Rock-Lucas* requires to determine whether the exclusion of particular evidence

---

[4] 28 U.S.C. § 2254(d)(1).

[5] 366 Ark. 152, 158, 233 S.W.3d 680, 685 (2006).

[6] The *Pulizzano* test requires a defendant to prove each of the following five factors before a court will allow admission of an alleged victim's prior sexual conduct:

> (1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect.

*State v. Pulizzano*, 155 Wis. 2d 633, 656, 456 N.W.2d 325, 335 (1990). *See also Townsend*, 366 Ark. at 158, 233 S.W.3d at 685 (adopting this test).

[7] *See, e.g.*, *Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997) ("[W]e are powerless to determine that evidence is inadmissible as a matter of [state] law.").

[8] *See id*.

under the rape-shield rule "is arbitrary or disproportionate to the State's legitimate interests."[9] The underlying assumption of the *Pulizzano* test is that, unless each of the five factors are proven, keeping the information at issue out of the trial is not arbitrary or disproportionate to the state's interests in protecting the alleged victim from unnecessary embarrassment, harassment, invasion of privacy, and the like.

The state trial court (whose decision was ultimately blessed by the Supreme Court of Arkansas on direct appeal) only addressed the first *Pulizzano* factor.[10] That's because the state trial court concluded that Mr. Joyner had not, at the rape-shield hearing, proved that the 2001 sexual assault clearly occurred. So we must ask whether it is contrary to, or an unreasonable application of, the *Rock-Lucas* principle to require a defendant to prove at a rape-shield hearing that the prior act clearly occurred before a defendant is allowed to (a) introduce evidence of it at trial or (b) question the victim about it at trial. The answer to that question is no. Requiring a judicial determination that a past sexual act clearly occurred before a defendant can raise the specter of that act at trial may be good or bad legal policy, but it is not entirely unrelated (or even weakly related) to the State's interests animating its rape-shield law. Consequently, it is not arbitrary or disproportionate to those interests. No Supreme Court case says or hints otherwise.

*Fourth*, the way in which the trial judge conducted the rape-shield hearing and reached its *Pulizzano* decision did not transform the *Pulizzano* test from a reasonable application of the *Rock-Lucas* principle into an unreasonable application of the *Rock-Lucas* principle. The Petitioner, Mr. Joyner, faults the state trial court for excluding hearsay evidence from the rape-shield hearing and thus not considering it when making the *Pulizzano* decision.[11] Mr. Joyner

---

[9] *Barbe*, 521 F.3d at 449 (quoting *Rock*, 483 U.S. at 56) (internal quotation marks omitted).

[10] *See* Volume 3 of 2007 Trial Tr. (Doc 5-3) at 508–514.

[11] *See* Pet. for Writ of Habeas Corpus (Doc. 1) at 10–16.

also faults the state trial court for not making the alleged victim in this case testify at the rape-shield hearing, thus preventing the defendant from potentially eliciting testimony to show that the 2001 incident clearly occurred.[12] And Mr. Joyner faults the Supreme Court of Arkansas for blessing these alleged errors on direct appeal.[13] Mr. Joyner is wrong insofar as he asserts that any of this is contrary to, or an unreasonable application of, the *Rock-Lucas* principle.

This Court has found nothing to suggest that a state trial court is required to consider hearsay evidence (or any other inadmissible evidence) when making the case-by-case determination called for under the *Rock-Lucas* principle. The Court is not persuaded by the leaps of logic presented in Mr. Joyner's Objections on this point—especially since those leaps of logic seem more focused on whether the state trial court decision made sense as a matter of state law. In short, if the *Pulizzano* test is not contrary to, or an unreasonable application of, the *Rock-Lucas* principle—and the Court has already explained how it is not—then neither is excluding hearsay evidence from the analysis of the first *Pulizzano* factor.[14]

The alleged-victim-testimony issue is a little quirkier. In the direct appeal in this case, the Supreme Court of Arkansas explained that the rape-shield hearing "is not designed to be used as a subterfuge to obtain a discovery deposition from the alleged victim[,]" and thus "[t]here is no requirement that the victim present herself for questioning by the accused" at this hearing.[15] This is not a new rule for this case—the Supreme Court of Arkansas (and the state trial court) relied

---

[12] *See id*.

[13] *See id*. at 16–19.

[14] It is worth noting that, without the hearsay evidence, there was no evidence at the rape-shield hearing to show the 2001 incident might have occurred, let alone that it clearly occurred. Thus, to the extent any habeas concern exists with respect to the high bar seemingly created by the "clearly occurred" language in the first factor of the *Pulizzano* test, that concern is inapplicable to this case. Even if the "clearly occurred" language is too strong under the *Rock-Lucas* principle, there was no admissible evidence that the 2001 incident might have occurred.

[15] *Joyner v. State*, 2009 Ark. 168, at 8, 303 S.W.3d 54, 58 (citing *Sterling v. State,* 267 Ark. 208, 590 S.W.2d 254 (1979)) (omission in original).

on caselaw settled about a quarter century earlier.[16] Nor is this rule surprising. Like many states, Arkansas has held tight to the traditional rule of no discovery depositions in criminal cases.[17] And the Supreme Court of Arkansas has made clear that this rule is not open to judicial adventurism, explaining that "[i]n Arkansas, the right to take depositions rests upon statutory authority and in no case can the right be exercised unless the authority therefor exists."[18] Understood in this context, it is clear that both the state trial court and the Supreme Court of Arkansas concluded in Mr. Joyner's case that forcing the alleged victim to answer questions at the rape-shield hearing would be tantamount to allowing a discovery deposition.[19]

"'There is no general constitutional right to discovery in criminal cases . . . .'"[20] So, with very limited exceptions not applicable here, there's no federal supervision of pre-trial discovery in criminal proceedings, and states have been "left to . . . experiment . . . as they see fit."[21] Given this default rule, it cannot be said that the *Rock-Lucas* principle requires a state trial judge to allow a defendant to question the alleged victim about past sexual conduct at the rape-shield hearing. Limiting the rape-shield hearing (and the resulting *Pulizzano* decision) to evidence already in the possession of the defense might not be the best way to put the *Rock-Lucas* principle into effect—but it's not an unreasonable way to do it. No Supreme Court case says or hints otherwise.[22]

---

[16] *See id.*

[17] *See* Bryan Altman, *Can't We Just Talk About This First?: Making the Case for the Use of Discovery Depositions in Arkansas Criminal Cases*, 75 Ark. L. Rev. 7, 14–19 (2022).

[18] *Id.* at 15–16 (quoting *McDole v. State*, 339 Ark. 391, 399, 6 S.W.3d 74, 79 (1999)) (internal quotation marks omitted).

[19] *See Joyner*, 2009 Ark. 168, at 8, 303 S.W.3d at 58–59.

[20] Altman, *supra* note 16 at 9 (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)) (omission in original).

[21] *Id.* (citing *Wardius v. Oregon*, 412 U.S. 470, 474 (1973)).

[22] Additionally, while the more private nature of questioning in a rape-shield hearing mitigates some of the State's interests animating the rape-shield law, it does not eviscerate those interests. Being questioned by a lawyer in front of a judge about past sexual acts is still humiliating, even if it is not fully public.

*Fifth*, in light of the trial record, it is unlikely in the extreme that the outcome of the trial would have changed in any way if Mr. Joyner's trial counsel had been permitted to question the alleged victim about or otherwise establish the (purported) occurrence of the 2001 incident. Mr. Joyner explains that the purpose for putting this evidence on at trial would have been to show that the physical status of the alleged victim's hymen in 2006 could have been caused by the 2001 incident as opposed to being caused by Mr. Joyner's alleged conduct.[23] But the jury convicted Mr. Joyner even after hearing about an incident in 2000 that could have been the cause of the physical status of the alleged victim's hymen in 2006.[24] And although the incident in 2000 involved a finger, whereas the alleged 2001 incident involved a penis, that does not matter on this trial record. The testifying physician was clear that the damage to the hymen could have been caused by either a finger or a penis (or some other object).[25] There is no reason at all to think the jury would have been affected any more by hearing of the 2001 incident than the jury was by hearing of the 2000 incident. In the context of this case, one more potential cause of the alleged victim's physical status in 2006 would have made no difference. That's certainly understandable, given the rest of the trial evidence against Mr. Joyner.

*Sixth* and finally, the Court acknowledges and appreciates Mr. Joyner's concession that *Shinn v. Ramirez* dooms the portion of his ineffective assistance of counsel claim related to the failure to present admissible evidence in the rape-shield hearing.[26]

---

[23] *See* Pet. for Writ of Habeas Corpus (Doc. 1) at 6–19.

[24] *See* Volume 3 of 2007 Trial Tr. (Doc. 5-3) at 614–23; Volume 5 of 2007 Trial Tr. (Doc. 5-5) 1030–31, 1195.

[25] *See* Volume 3 of 2007 Trial Tr. (Doc. 5-3) at 616–23.

[26] *See* Petitioner's Reply Br. (Doc. 9) at 7–8 ("With regard to the failure to present the documentary evidence of the alternative perpetrator, Joyner acknowledges that the decision this week in *Shinn v. Martinez Ramirez*, 596 U. S. [366] . . . can be read to preclude a hearing to present the documentary evidence not presented by trial or postconviction counsel. Assuming that the Supreme Court does not recede from this misbegotten decision, this Court cannot conduct a hearing."). *Accord Shinn v. Ramirez*, 596 U.S. 366, 382 (2022) ("[U]nder § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel.").

In light of all of the foregoing, the Petition for Writ of Habeas Corpus is DISMISSED. All requested relief is DENIED, and Judgment will be entered for Respondent Payne. A certificate of appealability will not issue.[27]

IT IS SO ORDERED this 28th day of February 2024.

                                                          LEE P. RUDOFSKY
                                                          UNITED STATES DISTRICT JUDGE

---

[27] The dismissal of this habeas petition is best described as a merits dismissal. When a district court dismisses a habeas petition on the merits, a certificate of appealability may be issued only if the petitioner "demonstrate[s] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473 (2000). To the extent any dismissal could be characterized as procedural, "[b]efore granting a certificate of appealability on a procedural issue, a district court should determine both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ward v. Hobbs*, 738 F.3d 915, 916 (8th Cir. 2013) (internal quotation marks omitted) (emphasis in original).